### KEWANEE MFG. CO. et al. v. LEIGH.

(Circuit Court of Appeals, Seventh Circuit. January 3, 1905.)

#### No. 1,085.

INJUNCTION—RESTRAINING PROSECUTION OF ACTION AT LAW—GROUNDS.

The defendant in an action at law by a corporation for money had and received, who is severally liable with another person, not sued, for the debt, is not entitled to enjoin the action, and remove the litigation into a court of equity, on allegations that his co-debtor is the principal stockholder in plaintiff corporation, that it is indebted to him, and he in turn is indebted to defendant, in order that the several accounts may be adjusted, and defendant enabled to establish an equitable set-off, where it is not alleged that such other person is insolvent, since the other stockholders are entitled to have the debt due the corporation collected, and cannot be compelled to await the adjustment of equities between the debtors.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

The bill was by the appellee, a citizen of the State of Illinois, against the appellant, the Kewanee Manufacturing Company, a citizen of the State of New Jersey, and appellant Laughlin, said in the bill to sometimes claim his citizenship in Missouri, and sometimes in Illinois, to restrain appellants from prosecuting a certain action at law, brought by the Kewanee Manufacturing Company against appellee, in the Circuit Court of the United States, for the Northern District of Illinois, to recover the sum of seven thousand dollars, with interest; and resulted in an interlocutory decree ordering an injunction, as prayed for in the bill. From this interlocutory decree the appeal is prosecuted.

The motion for interlocutory decree was heard upon the bill, answer and replication. The bill avers that in the month of November, 1898, the defendant, Laughlin, was president, general manager and chief officer in control of said Kewanee Manufacturing Company, and said Laughlin was interested in what was known as the Noonday Mining Properties in the State of Oregon; that for the purpose of developing said properties, Laughlin, in said month of November, 1898, agreed to advance George J. Atkins and George E. Milligan, for the development of said mining properties in the State of Oregon, the sum of ten thousand five hundred dollars; that Laughlin requested appellee to receive said moneys from him, the said Laughlin, and forward the same to George J. Atkins and George E. Milligan, doing business under the firm name of Atkins and Milligan, who were representing Laughlin in the

development of said mining property in said State of Oregon; that, in pursuance to said request, Laughlin did deliver to appellee, on or about the fourteenth day of December, 1898, the sum of fifteen hundred dollars, and on or about the ninth day of May, 1899, the further sum of about fifteen hundred dollars, and on or about June seventh, 1899, the further sum of fifteen hundred dollars, and on or about July eighteenth, 1899, the further sum of twenty-five hundred dollars; all of which said sums were received by appellee, at the request of Laughlin, and in pursuance of his agreement with said Atkins and Milligan for the development of said mining properties in the State of Oregon, and were by appellee turned over to Atkins and Milligan for the use and benefit of Laughlin, in said mining properties in the State of Oregon.

That the said moneys so delivered to appellee, to be transmitted to the said Atkins and Milligan, for the use and benefit of Laughlin, were in the form of checks drawn by the Kewanee Manufacturing Company; that Laughlin was then and now the president, general manager, and chief executive officer of the said Kewanee Manufacturing Company; and that said Kewanee Manufacturing Company was organized in or about the year 1898, with a capital stock of seventeen thousand one hundred dollars, divided into seventeen thousand one hundred shares, of the par value of one dollar each; which said checks were signed by the treasurer of said Kewanee Manufacturing Company, and countersigned by Laughlin as the general manager thereof.

That on the first day of November, 1898, and thence hitherto, the said Kewanee Manufacturing Company was indebted to, and has remained indebted to Laughlin, in the sum of more than fifteen thousand dollars, and that said Kewanee Manufacturing Company has sustained no loss or damage whatsoever by reason of the execution and delivery of said checks by Laughlin to appellee for the purposes aforesaid, and that Laughlin alone caused the commencement of, and is prosecuting the suits at law hereinafter stated against appellee, in the name of said Kewanee Manufacturing Company for the sole purpose of preventing appellee from setting out and making the defense in an action at law that said moneys were in fact obtained by Laughlin from said Kewanee Manufacturing Company to be used and were used, for his own purposes and that appellee is not in equity and good conscience liable to said Kewanee Manufacturing Company therefor.

That Laughlin, on the first day of November, 1898, and thence hitherto, has owned, in his own right and name, more than twelve-seventeenths of the entire capital stock of the said Kewanee Manufacturing Company.

That the said Laughlin caused said company to be incorporated on or about the tenth day of June, 1898, and ever since its incorporation has absolutely controlled its policy and the conduct of its corporate affairs, selected its board of directors, has been the principal owner of its stock, and in absolute control of the disbursement of its money.

That in the year 1899, Laughlin, acting for the Kewanee Manufacturing Company, sold and conveyed all of the assets, property, business and good will of the said Kewanee Manufacturing Company, prior to June tenth, 1899; that the proposition for said sale was in the name of Laughlin, and that Laughlin caused formal execution of papers ratifying said sale to be made and delivered to the vendee; and that from and after said tenth day of June, 1899, said Kewanee Manufacturing Company has not been engaged in any business for which it was incorporated, so far as appellee shows or can ascertain.

That in the year 1899, Laughlin informed appellee that, in pursuance to said sale of the good will and assets of said Kewanee Manufacturing Company, said Kewanee Manufacturing Company had gone out of business, and that its entire capital stock was to be turned over to the purchaser of the good will and assets of said Kewanee Manufacturing Company; and

That Laughlin claims to own twenty-seventeenths of the capital stock of the said Kewanee Manufacturing Company; and that the books and records of the said Kewanee Manufacturing Company show that seven-seventeenths of its said capital stock other than that held by Laughlin has been marked "surrendered."

The bill further avers, on information and belief, that at the time Laughlin drew the checks, the Kewanee Company was indebted to Laughlin in excess

of such checks; that Laughlin is indebted to appellee in the sum of upwards of ten thousand dollars; that Laughlin is the sole executive officer of the Kewanee Company; that since the organization of the company, Laughlin has conducted his private business, and deposited his private moneys in the bank account of the company, and paid his private debts with the moneys and checks of the company, with the knowledge and consent of the stockholders and directors of the company.

The bill then avers that suits have been brought upon such checks in the Circuit Court of Cook County, for the entire seven thousand dollars; others in the Circuit Court of Cook County for the different sums making up, in the aggregate, the sum of seven thousand dollars; and others in the United States Circuit Court for such sums—more than thirty suits in all, having been brought.

The answer denies that appellee received the checks of the Kewanee Company for the use and benefit of Laughlin, or to be transmitted to Atkins and Milligan for Laughlin's use and benefit; but avers that in the summer or fall of the year 1898, the Noonday Mining Company was a corporation, organized under the laws of the State of Illinois, having its chief office in the city of Chicago, and the appellee was and for several years had been its president and the chief officer in the control of the policy and affairs as well as a large shareholder and bondholder of said company; that Laughlin was interested in said company as a bondholder only, having previously lost faith in the value of some of its mining properties, as well as in the management of its mining operations, which he regarded as inefficient and incompetent, and having renounced his stockholding and practically severed his connection with the company; that George J. Atkins and George E. Milligan were also interested in said company as bondholders and stockholders; that at the request of the appellee, Laughlin accompanied him to the office of the Noonday Mining Company to hear a report which the said Atkins desired to make as the result of a recent visit to said mines; that there were present at such meeting the four persons named, to-wit: Appellee, Laughlin, Atkins and Milligan; that among other things done at said meeting, Atkins reported that he had made a careful investigation of the situation at the mill and mines of said company, and had found a large amount of ore of sufficient value to justify the starting up of the mill and tramway, but that the mill and tramway needed to be overhauled and repaired, and that this could not be accomplished unless about the sum of three thousand dollars was furnished to the company; that as a result of the discussion which followed this report, appellee expressed a strong desire to have the mill and tramway put in condition and to have the mill started at the earliest practicable date, and have the ore to which Atkins referred, reduced and the bullion extracted from it; but declared that his funds were exhausted, and that he was unable to further respond to the company's necessities; that at the request of said appellee, Laughlin agreed to take the responsibility of loaning to the appellee out of the moneys of the Kewanee Manufacturing Company and the American Brake Beam Company, the moneys needed for such purposes, provided the appellee would execute and deliver to the companies respectively, his note for each sum of money so loaned, such notes to bear interest at the rate of six per cent. per annum, and to be payable on demand, and to this appellee then and there agreed; that between appellee and Laughlin it was then and there further agreed that in the event of loss, Laughlin would make good to the appellee one-fourth of the amount of such loans, and that as between them they would, until said Atkins and Milligan were able to repay, divide equally their interest in the proposed venture, or their share of the loss, which was one-half of the whole; that it was agreed between appellee and Laughlin that in any event as between appellee and the company whose money he might borrow for that purpose, the appellee should be liable and responsible for the whole, and as evidence thereof should make and deliver his promissory note for each and every sum borrowed; that in this way, and in this way only, were any of the moneys represented by the checks of the Kewanee Manufacturing Company referred to in appellee's bill of complaint, paid over to appellee for the use or benefit, or on account of Laughlin.

The further facts are stated in the opinion.

William Brace, for appellant.
David S. Geer, for appellee.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts, delivered the opinion:

The bill and answer taken together, show that the moneys received from the Kewanee Company went into a personal joint venture of Laughlin and appellee. Independently of the other facts shown, this would entitle the Kewanee Company to recover in an action at law from Laughlin or appellee, severally, as it might choose. Such was the purpose of the action enjoined by the interlocutory decree.

It is contended, however, by appellee, that such action was rightfully enjoined because (a) All the stock of the Kewanee Company, except that held by Laughlin, has been surrendered, thus making Laughlin the sole owner of the company; wherefore appellee ought to be permitted to set up his equitable set off against Laughlin. (b) That the money taken from the Kewanee Company, was to pay for the Kewanee Company's indebtedness to Laughlin, wherefore it was Laughlin's money, and the appellee does not owe the Kewanee Company. And (c) at the time of the transaction, the Kewanee Company owed Laughlin fifteen thousand dollars; wherefore, Laughlin equitably owing appellee his proportion of the money advanced for the mining venture, appellee ought to be permitted, equitably, to set off such proportion against the Kewanee Company's claim.

The difficulty with the first contention—that Laughlin is now the owner of all stock of the Kewanee Company, wherefore appellee should be permitted to equitably set off his claim against Laughlin—is, that while the bill simply charges that the books and records of the company show that the stock, other than that held by Laughlin, has been marked "surrendered," the answer avers that such surrender was simply a turning in of the stock for the purpose of endorsing, upon the certificates thereof, the distributive dividends which had been made from time to time to the shareholders out of the assets of the company. These averments, taken together, show no transfer of title either legal or equitable, or of the beneficial interest, from the other shareholders to Laughlin.

The second contention—that the money involved in the suit was taken by Laughlin to pay the Kewanee Company's indebtedness to him—reduces itself to this: That the Kewanee Company has, in fact, no title to the money on which the action at law was based. But this is a defense clearly available to appellee in the action at law.

The third defense—that the Kewanee Company is in fact indebted to Laughlin, wherefore appellee should be permitted to set off Laughlin's equitable liability on the moneys advanced against this indebtedness—necessarily rests on this proposition: That a defendant in an action at law, severally liable with another not made a defendant for the moneys had and received from the plaintiff, may show that the other defendant has a complete set-off against the claim, thereby defeating the action, and leaving it to defendants to settle between them-

selves, and according to their own equities, the accounts. But this implies, first, that before the Kewanee Company can enforce its plain demand against one of its several debtors, it must litigate the state of the accounts between it and another debtor—one not insolvent. Also that the creditor must wait until the state of account between the several debtors be adjusted; otherwise the extent of the set off could not be determined. This, of course, cannot be. Whatever may be the equities between appellee and Laughlin, and whatever may be the right of appellee to brush aside the corporate entity behind which Laughlin is an individual owner, the rights of the other stockholders holding five-seventeenths of the stock cannot be thus hindered, delayed and jeopardized. Their right is, that the corporation shall recover what is due to it; and from either of the persons who severally owe the debt; and that such recovery shall be without entanglement, on account of the personal affairs of some other stockholder with the debtor sued. That appellee might, upon a proper showing, acquire through a court of equity, a hold upon the proportion of the judgment going to Laughlin, is not denied; but the case under consideration does not involve that situation, or that character of equitable remedy.

The interlocutory decree was, in our judgment, improvidently entered, and is reversed.